# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | Bankruptcy Case No. 25-16569-JGR |
| JAMES COREY GOODE, | |
| STACY HARTMAN GOODE, | Chapter 13 |
| Debtors. | |
| GAIA, INC. | Adv. Pro. No. 26-01007-JGR |
| Plaintiff, | |
| v. | |
| JAMES COREY GOODE, | |
| Defendant. | |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

Pursuant to Fed.R.Bankr.P. 7055 and Fed.R.Civ.P. 55(1), Gaia, Inc. ("**Gaia**"), through its undersigned counsel, Merrick Shaner & Bernstein, LLC, respectfully moves this Court for Entry of Default Judgment against James Corey Goode ("**Mr. Goode**"), on Gaia's Complaint seeking to deny Mr. Goode the discharge of Gaia's breach of contract claims currently pending in the United States District Court for the District of Colorado, and states as follows:

### JURISDICTION AND VENUE

1.     Mr. Goode and his co-debtor Stacy Hartman Goode filed for relief under Chapter 13 of the United States Code (the "**Bankruptcy Code**") on October 9, 2025 (the "**Petition Date**").

2.     Gaia commenced this proceeding on January 5, 2026, pursuant to 11 U.S.C.

§ 523(a)(2)(A), wherein Gaia seeks to have the Contingent Contract Claims,[1] together with reasonable costs, attorneys' fees, and interest, declared to be non-dischargeable. *See* Dkt. 1. Gaia effected service upon Mr. Goode and his attorney in the underlying Chapter 13 proceeding as required by Fed. R. Bankr. P. 7004(b)(3), by serving Mr. Goode and his attorney with a copy of the Complaint and Summons, among other documents. *See* Bernstein Aff., attached as Exhibit 1, ¶ 5. A copy of the Certificate of Service was previously filed with the Court. *See* Dkt. 6.

3.      Mr. Goode did not timely answer, as further detailed in Gaia's Motion for Entry of Clerk's Default (*see* Dkt. 7), and on March 17, 2026, the Clerk of the Bankruptcy Court filed a Clerk's Entry of Default. *See* Dkt. 10.

4.      Mr. Goode is not active-duty military personnel and therefore the protections of the Servicemembers Civil Relief Act of 2003, 50 App. U.S.C. § 501, *et seq.*, do not apply. *See* Affidavit of Military Service attached as Exhibit 2.

5.      By this Motion, Gaia seeks entry of Default Judgment in its favor and against Mr. Goode declaring the Contingent Contract Claims to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### ALLEGATIONS FOR ENTRY OF DEFAULT JUDGMENT

6.      Pursuant to Fed.R.Civ.P. 10 (incorporated by Fed.R.Bankr.P. 7010), Gaia incorporates the allegations of its Complaint as though fully set forth herein. A true and correct copy of the Affidavit of Kiersten Medvedich in support of the allegations contained herein is attached hereto as Exhibit 3.

7.      Gaia seeks the entry of default judgment against Mr. Goode on Gaia's Complaint seeking to deny Mr. Goode the discharge of Gaia's breach of contract claims currently pending in

---

[1]All capitalized terms not otherwise defined herein shall have the meaning(s) set forth in the Complaint. *See* Dkt. 1.

the United States District Court for the District of Colorado, as pleaded in its Complaint pursuant to Fed. R. Bankr. P. 7055(b) and L.B.R. 7055-1. *See* Dkt. 1.

8.     In summary, Mr. Goode entered into contracts[2] with, and accepted payments from, Gaia (on his own behalf and on behalf of Goode Enterprise Solutions, Inc. ("**GES**"), an entity he wholly owns and controls) under false pretenses, upon which Gaia justifiably relied.  *See e.g.*, Medvedich Aff, Exhibit 3.

9.     Accordingly, Mr. Goode should not be entitled to a discharge in bankruptcy of Gaia's breach of contract claims.

**A.     Agreements for Talent Services and Related Payments**

10.     Gaia first commenced its contractual relationship with GES in 2015 by entering into a Talent Agreement, dated as of June 20, 2015 (the "**2015 Contract**"), pursuant to which Mr. Goode agreed to appear on Gaia programming.  Medvedich Aff. ¶ 6.

11.     The 2015 Contract contemplated production of at least 52 programs of approximately 30 minutes each (collectively, the "**Programs**," and each, a "**Program**").  *Id*. at ¶ 7.

12.     Pursuant to the 2015 Contract, Mr. Goode agreed to perform on-camera services, attend rehearsals, attend photography, voice-over and "re-take" or "overdub" sessions, consult regarding development and pre-production of Programs, and promote and market the Gaia Programs in which he appeared (collectively, the "**Talent Services**").  *Id*. at ¶ 8.  In exchange for the above services, Gaia agreed to compensate Mr. Goode.  *Id*.

---

[2] Gaia is able to provide the Court with copies of the relevant contracts, which contain confidential information, if the Court desires.  If so, Gaia would seek leave to file the contracts under seal, with confidential information redacted. The same contracts, at issue in the underlying litigation, were previously filed in the District Court, *Goode, et al. v. Gaia, Inc.,* Civil Action No. 20-cv-00742-DDD-KAS (D. Colo), with certain confidential material redacted (Dkt. 260), as permitted by the District Court's order on Gaia's Motion to Restrict Access (Dkt. 257).

13. Thereafter, Gaia and GES entered into a second Talent Agreement, dated as of August 22, 2016 (the "**2016 Contract**"). *Id*. at ¶ 9.

14. The 2016 Contract likewise contemplated that Mr. Goode would provide Gaia with Talent Services, including his appearance in Gaia Programs. (The number of Programs was to be determined based on good faith discussions between the parties). *Id*.

15. The 2016 Contract was set to end upon the later of July 31, 2017 and the completion of the agreed Talent Services, and was automatically renewable for successive one-year terms unless terminated by either party. *Id*.

16. The 2016 Contract contemplated termination for "cause" upon 30 days' written notice. *Id*. "Cause" included failure to perform under the contract as well as making malicious or defamatory statements about Gaia, Gaia-affiliated parties, and the Programs. *Id*.

17. The 2016 Contract was renewed by an amendment dated as of August 18, 2017 (the "**August 2017 Amendment**"). *Id*. at ¶ 10.

18. Pursuant to the August 2017 Amendment, among other revisions, Gaia agreed to pay $50,000.00 to Mr. Goode in exchange for his appearance at two future live events (the "**Live Events**"). *Id*. The amendment also contemplated the payment of a $25,000.00 advance of the fees that would be due for his appearances at the Live Events (the "**Advance**"). *Id*.

19. Gaia paid the Advance to Mr. Goode on or about August 25, 2017. *Id*. at ¶ 11.

20. Mr. Goode did not appear at any Live Events for which he received the Advance. *Id*. at ¶ 12.

21. Gaia is owed the entirety of the Advance, which was contingent on Mr. Goode's public appearances at the Live Events. *Id*. at ¶ 32.

22. Gaia and GES further amended the 2016 Contract on or about November 7, 2017

("**November 2017 Amendment**" and, together with the August 2017 Amendment, the "**Amendments**"). *Id*. at ¶ 13.

23.     Pursuant to the November 2017 Amendment, the parties agreed that Mr. Goode would continue performing Talent Services relating to the Programs. *Id*.

24.     Related thereto and made a part thereof, Mr. Goode (on his own behalf), executed the Relocation Benefit Agreement, dated as of November 17, 2017, providing the terms pursuant to which Gaia agreed to pay up to $20,000.00 of Mr. Goode's relocation expenses (the "**Relocation Benefit**"). *Id*.

25.     The November 2017 Amendment (including the Relocation Benefit Agreement) stated that Mr. Goode would not have to repay the Relocation Benefit to Gaia if (and to the extent that) Mr. Goode remained "Under Contract" (as defined below) with Gaia for a period of 36 months from the date of relocation. *Id*. at ¶ 14.  Mr. Goode was required to repay the Relocation Benefit, on a prorated basis, based on the amount of time in the 36-month period following relocation during which he was not "Under Contract" with Gaia. *Id*.

26.     "Under Contract" is defined in the Relocation Benefit Agreement to require, *inter alia*, that Mr. Goode appear in at least 360 minutes of published Gaia content per quarter. *Id*. at ¶ 15.

27.     The Relocation Benefit Agreement further provided that "in the event legal action is brought to enforce the terms of this Relocation Benefit Agreement, the prevailing party shall be entitled to recover reasonable costs of such include, including attorney's fees[.]" *Id*. at ¶16.

28.     Upon information and belief, Mr. Goode relocated from Texas to Colorado in or around November 2017. *Id*. at ¶ 17.

29.     Gaia made two separate payments to Mr. Goode in December 2017, totaling

$11,069.62 (collectively, the "**Relocation Payment**" and, together with the Advance, the "**Payments**") (Gaia paid $6,083.62 to Mr. Goode on December 11, 2017, and $4,986.00 on December 18, 2017). *Id*. at ¶ 18.

30.     In each quarter following Mr. Goode's relocation through the termination of the 2016 Contract for cause, which became effective as of August 12, 2018, Mr. Goode failed to appear in 360 minutes of published Gaia content. *Id*. at ¶ 19.

31.     Thus, Mr. Goode was not "Under Contract" at any time following Mr. Goode's relocation to Colorado (i.e. November 2017 through November 2020).

32.     Gaia is therefore owed the entire Relocation Payment, as well as costs related to Gaia's efforts to recover the same through legal action (*see Goode v. Gaia*, Civ. Action No. 20-cv-00742-DDD-KAS (D. Colo. Mar. 17, 2020)), including attorneys' fees and interest. Medvedich Aff. at ¶ 32.

**B.     Mr. Goode's False Representations and Gaia's Justifiable Reliance Thereon**

33.     Gaia entered into the Amendments and the Relocation Benefit Agreement under false pretenses, based on Mr. Goode's knowing misrepresentations of his ability to perform the contract terms. *Id*. at ¶¶20-29. Mr. Goode made these false representations with intent to deceive Gaia and cause it to believe he could perform the Talent Services, in order to induce it to make the Payments for his benefit. *Id*.

34.     During the months leading up to execution of the above agreements and Gaia's payment of the Advance and the Relocation Payment, Mr. Goode affirmatively represented to Gaia that he had enough material to continue producing content throughout the agreed contract term and that he intended to perform Talent Services as required under the Amendments. *Id*. at ¶ 20.

35.     Specifically, in or around April 2017, Mr. Goode discussed with Gaia the

6

production of a new show designed to focus on Mr. Goode's personal experiences ("**Above Cosmic**"). *Id*. at ¶ 21.

36. As discussions progressed, on or around July 29, 2017, Mr. Goode represented that he had sufficient material for 38 episodes of Above Cosmic. *Id*. at ¶ 22.

37. Mr. Goode also represented that this new material could serve as content for use at future live events. *Id*. at ¶ 23.

38. Based upon Mr. Goode's affirmative representations that he had enough new material for future live events and additional Programs, Gaia was induced to enter into the August 2017 Amendment and to pay the Advance. *Id*. at ¶ 24.

39. Mr. Goode also induced Gaia to enter into the November 2017 Amendment and the Relocation Benefit Agreement, and to make the Relocation Payment, by affirmatively representing that he intended to perform his obligations under the November 2017 Amendment. *Id*. at ¶ 25. Mr. Goode falsely represented that he had enough material to develop and produce Above Cosmic throughout the agreed contract term, and that moving to Colorado would enable him to efficiently shoot content on-site at Gaia's headquarters in Louisville, CO. *Id*.

40. After signing the November 2017 Amendment, Mr. Goode requested duplicative financial contributions from the public to support his relocation to Colorado. *Id*. at ¶ 25.

41. At the time that Mr. Goode signed the Amendments and the Relocation Benefit Agreement, Mr. Goode knew he could not, and did not intend to, perform the Talent Services required under the Amendments. Yet, he affirmatively represented that he could do so in order to receive the Payments.

42. For example, while filming a pilot for a production called "Above Cosmic,", Mr. Goode was repeatedly unable to recall his own "story" and required continual prompting from his

manager to do so, indicating that the narrative was fabricated rather than reflecting his recollection of an experience. *Id*. at ¶ 26.

43.     In addition, shortly following his receipt of the Payments, Mr. Goode stopped appearing for scheduled production dates for Gaia Programs, thus failing to provide useable content for Above Cosmic. *Id*. at ¶ 27. (He also made false and defamatory comments directed to Gaia and affiliated individuals. *Id*.).

44.     Mr. Goode knew he did not have enough material to continue producing Programs or to make appearances at the Live Events prior to signing the Amendments and the Relocation Benefit Agreement and accepting the Advance and the Relocation Payment from Gaia. However, he intentionally misrepresented those facts to Gaia during discussions that were designed to induce Gaia to make the Payments. *Id*. at ¶ 29.

45.     Gaia justifiably relied on Mr. Goode's fraudulent misrepresentations that he would continue to produce Programs and otherwise perform the Talent Services in deciding to pay the Advance and the Relocation Payment to Mr. Goode. *Id*. at ¶ 28.

46.     Gaia would not have proceeded with the Amendments, or the Payments, but for Mr. Goode's knowing misrepresentations of his ability and intention to continue performing Talent Services. Mr. Goode made the misrepresentations with the intention to deceive Gaia so it would make the Payments to Mr. Goode, and Gaia justifiably relied on those misrepresentations. Thus, Gaia was induced to enter into the Amendments and make the Advance and the Relocation Payment under false pretenses and based on Mr. Goode's false representations. *Id*. at ¶ 29.

47.     Based on Mr. Goode's failure to appear at production events and other obligations under the Amendments, and further on his numerous defamatory statements about Gaia and affiliated individuals, Gaia terminated the 2016 Contract on 30 days' written notice, effective on

8

August 12, 2018.  *Id*. at ¶¶ 30-31.

48.     Gaia sought recovery of its contract damages by asserting claims against Mr. Goode in an action currently pending (and stayed) in the U.S. District Court for the District of Colorado. *See Goode, et al. v. Gaia, et al.*, Civ. Action No. 20-cv-00742-DDD-KAS (D. Colo. Mar. 17, 2020), Dkt. 401, 521.

**REQUESTED RELIEF**

49.     Gaia now seeks the entry of a default judgment in its favor and against Mr. Goode denying Mr. Goode a discharge of the Contingent Contract Claims, insofar as they relate to the Payments, attorneys' fees in connection with recovery of thereof, and interest, together with the costs and disbursements of this action and for such other and further relief as this Court deems just, proper, and equitable.

50.     Gaia asserts that there is no just reason to delay the entry of a default judgment against Mr. Goode.  Mr. Goode was properly served with the Complaint; he had sufficient time to appear and defend this action; and he has failed to appear and defend.

51.     Granting to Gaia the relief requested would not dispose of or resolve the Contingent Contract Claims—which would be accomplished in the District Court after the bankruptcy stay is lifted—but merely hold that they will not be discharged by the present bankruptcy proceedings.

52.     A proposed Order and proposed form of Judgment are annexed hereto.

WHEREFORE, Gaia respectfully requests that the Court:

A.     Enter an Order granting this Motion;

B.     Enter Default Judgement against Mr. Goode and in favor of Gaia, denying Mr. Goode discharge of the Contingent Contract Claims, insofar as they relate to the Payments, attorneys' fees in connection with recovery of such Payments, and interest, together with the cost

and disbursements of this action, pursuant to 11 U.S.C. § 523(a)(2)(A); and,

C.   Granting such other and further relief as this Court deems appropriate.

Dated: May 15, 2026          Respectfully submitted,

/s/ Joseph T. Bernstein
Joseph T. Bernstein, CO Atty. No. 37753
MERRICK SHANER & BERNSTEIN, LLC
4600 South Syracuse Street, 9th Floor
Denver, Colorado 80237
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
E-Mail: jtb@msbfirm.com

ATTORNEYS FOR GAIA, INC.

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above **MOTION FOR DEFAULT JUDGMENT** was placed in the U.S. Mail, postage prepaid, or delivered electronically via the Court's Electronic Case Filing system, on May 15, 2026, addressed as follows:

***Debtors***
James Corey Goode and Stacy Hartman Goode
6525 Gunpark Dr
# 370-227
Boulder, CO 80301

***Debtors' Bankruptcy Attorney***
Nicholas Craig Horvath
The Horvath Law Firm, LLC
P.O. Box 698
Littleton, CO 80160

***Debtors' Attorney in District***
***Court Litigation***
Valerie Ann Yanaros
Yanaros Law, P.C.
8300 Douglas Avenue Suite 800
Dallas, TX 75225

***Chapter 13 Trustee***
Adam M Goodman
P.O. Box 1169
Denver, CO 80201

Dated: May 15, 2026           Respectfully submitted,

/s/ Joseph T. Bernstein
Joseph T. Bernstein, CO Atty. No. 37753
MERRICK SHANER & BERNSTEIN, LLC
4600 South Syracuse Street, 9th Floor
Denver, Colorado 80237
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
E-Mail: jtb@msbfirm.com

ATTORNEYS FOR GAIA, INC.